UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILL LECKEMBY, | § | CV No. 1:13-CV-873-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GREYSTAR MANAGEMENT SERVICES, LP, | § | |
| | § | |
| | § | |
| Defendant. | § | |

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Defendant Greystar Management Services, LP ("Defendant") (Dkt. # 15). On April 21, 2014, the Court held a hearing on the Motion. At the hearing, Emily Frost, Esq., represented Plaintiff Will Leckemby ("Plaintiff"), and Juan Carlos Lopez-Campillo, Esq., represented Defendant. After carefully considering the supporting and opposing memoranda and the arguments presented at the hearing, the Court **GRANTS** Defendant's Motion for Summary Judgment.

BACKGROUND

The instant case arises out of Plaintiff's employment with Defendant. Defendant is a company that provides property management services to residential apartment owners in 34 states. (Dkt. # 15-10, Ex. I ¶ 2.) Plaintiff worked for

1

Defendant as a maintenance supervisor at the Remington apartment community in Austin, Texas from September 2010 to August 2012. ("Leckemby Dep.," Dkt. # 15-2, Ex. A at 18–19.) Plaintiff was over 40 years old during the period of his employment with Defendant. (See Dkt. # 19-1, Ex. A.) As a maintenance supervisor, Plaintiff supervised three employees and was responsible for overseeing and performing technical and mechanical work related to the buildings, grounds, amenities, and common areas of the property. (Leckemby Dep. at 20, 25–26.) Plaintiff was also responsible for making vacant units ready for new tenants within five days of the previous tenant's departure by ensuring that the units were cleaned and necessary repairs were made; these units are referred to as "make-readies." ("Anderson Dep.," Dkt. # 15-5, Ex. D at 20–21.)

Plaintiff reported directly to the Community Manager of the property. (Leckemby Dep. at 19.) In December 2011, Allison Duggan ("Duggan") began working at the Remington community as the Community Manager. ("Duggan Dep.," Dkt. # 15-4, Ex. C at 8–9, 53.) At the time, there was a substantial backlog of make-readies, and Plaintiff was not receptive to Duggan's questions and suggestions regarding ways to resolve the issue. (Id. at 51–52, 74–78.) According to Plaintiff, Duggan suggested to Plaintiff that he should work at a smaller property, which Plaintiff interpreted as a statement that he was "too old for the community." (Leckemby Dep. at 8.)

2

In April 2012, Duggan's supervisor, Regional Property Manager Candiss Escobar ("Escobar"), held a meeting with Plaintiff and Duggan to discuss the make-ready situation and the friction between Plaintiff and Duggan. (Id. at 51; "Escobar Dep.," Dkt. # 15-3, Ex. B at 14.) During the meeting, Plaintiff stated that he felt that he was being discriminated against based on his age. (Id.) Duggan testified that she was surprised at Plaintiff's statement because he had never made such a complaint before and "the conversation had nothing to do with age." (Duggan Dep. at 42.) Escobar did not interpret Plaintiff's statement as a discrimination complaint because it "came out of left field" and was made in the middle of a meeting concerning "make-readies and communication." (Escobar Dep. at 14–17.)

On May 2, 2012, Duggan issued a written warning to Plaintiff for smoking on company property after Plaintiff ignored her verbal requests to stop smoking in the maintenance shop. (Duggan Dep. at 60–61; Dkt. # 15-7, Ex. F.) In August 2012, Duggan issued another written warning to Plaintiff regarding an instance of subordination, Plaintiff's late arrival to and lack of assistance with a pool party on the property, and Plaintiff's failure to make additional progress on the backlog of make-readies. (Duggan Dep. at 119–121; Dkt. # 15-8, Ex. G.)

On August 17, 2012, Duggan met with Plaintiff concerning the written warning; Rosie Gonzalez ("Gonzalez"), the Assistant Community

Manager, was also present. (Duggan Dep. at 101; "Gonzalez Dep.," Dkt. # 15-6, Ex. E at 17–18.) There is conflicting testimony as to what occurred in the meeting. Plaintiff contends that the statements in the written warning were false, and that when he refused to sign the write-up, Duggan asked him for his keys. (Leckemby Dep. at 66.) Duggan and Gonzalez each testified that Plaintiff became upset during the discussion of the written warning, put his keys on Duggan's desk, and left, despite Duggan's statement that the meeting was merely a written counseling and that she wasn't asking for his resignation. (Duggan Dep. at 102; Gonzalez Dep. at 18.)

Plaintiff subsequently contacted Tony Wheeler ("Wheeler"), Defendant's Director of Employee Relations, and claimed he had been discriminated against based on his age. (Leckemby Dep. at 53–54, 67; Dkt. # 15-10, Ex. I ¶ 2.) Wheeler explained to Plaintiff that he had not been fired, which Plaintiff contested. (Leckemby Dep. at 53, 67.) After discussions with the human resources office, Escobar sent a letter regarding a "Transfer of Employment with Greystar," which offered Plaintiff a "change of position or transfer" as a maintenance supervisor at a property named Red River Flats on August 30, 2012. (Dkt. # 15-9, Ex. H; Leckemby Dep. at 69; Escobar Dep. at 75–76.) Plaintiff accepted the offer by signing the letter on September 2, 2012. (Dkt. # 15-9, Ex. H.) Plaintiff reported to work at Red River Flats on September 4, 2012, but

4

declined to take the position after speaking with the community manager and touring the property. (Leckemby Dep. at 77–78.)

On September 6, 2013, Plaintiff brought suit in the 419th Judicial District Court of Travis County, Texas, alleging that Defendant engaged in age discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"). (Dkt. # 1-1.) Defendant removed the case to this Court on October 1, 2013, invoking the Court's diversity jurisdiction. (Dkt. # 1.) Defendant filed the instant Motion for Summary Judgment on December 31, 2014. (Dkt. # 15.) Plaintiff filed a Response on January 21, 2015 (Dkt. # 19), and Defendant filed a Reply on February 11, 2015 (Dkt. # 22).

## LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). "Substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (internal quotation marks omitted).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

DISCUSSION

I.      Age Discrimination Claim

Under the TCHRA, an employer commits an unlawful employment practice if the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment because of the individual's age.  Tex. Lab. Code § 21.051.  "Section 21.051 is substantively identical to its federal equivalent in Title VII," with the exception that federal law protects age under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, which employs an analysis similar to the approach under Title VII.  Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 475 & n.2 (Tex. 2001); Tex. Lab. Code § 21.001 ("The general purposes of this chapter are to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments . . . .").  "[A]n unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice . . . ."  Tex. Lab. Code § 21.125(a).

To demonstrate an age discrimination claim based on circumstantial evidence, the plaintiff must show that he (1) is a member of the protected class; (2) was qualified for the position he sought or held; (3) suffered an adverse

employment action; and (4) was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004). Adverse employment actions include "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a non-discriminatory reason for the action. Id. at 562–63. If the employer meets its burden, the burden then shifts back to the plaintiff to show an issue of fact as to whether the employer's proffered reason is pretextual. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 345 (5th Cir. 2007). Under the TCHRA, the plaintiff must show either that the reason stated by the employer was a pretext for discrimination, or that the employer's reason, while true, was only one reason for its conduct, and that discrimination was also a motivating factor. Reed v. Neopost USA, Inc., 701 F.3d 434, 439–40 (5th Cir. 2012).

Here, Plaintiff argues that he has established a prima facie case of age discrimination because he has shown he is over 40 years old, was qualified for his

position, and was replaced by a younger employee.[1]  (Dkt. # 19 at 2.)  Plaintiff has not, however, shown that he was subject to an adverse employment action. Plaintiff's claimed adverse employment action is his alleged discharge on August 17, 2012.  The only support for the allegation that he was discharged, however, is Plaintiff's own belief that he was fired by Duggan in their meeting on August 17, 2012.  (See Leckemby Dep. at 66, 70, 81.)

The record shows that Duggan did not have the authority to discharge employees, and thus could not have terminated Plaintiff's employment even if she had intended to do so.  (Dkt. # 19-3, Ex. C at 21.)  Additionally, both Duggan and Gonzalez testified that Plaintiff offered up his keys in the August 17 meeting without prompting and that Duggan did not ask for his keys or otherwise indicate that he was being discharged.  (Duggan Dep. at 102–04; Gonzalez Dep. at 18.) Defendant shortly thereafter offered to transfer Plaintiff to another property in a letter regarding a "Transfer of Employment with Greystar," describing the offer as a "change of position or transfer" and requesting that Plaintiff indicate acceptance by signing and "returning a copy to your Supervisor."  (Dkt. # 15-9, Ex. H at 1.)

---

[1] Gonzalez, the Assistant Community Manager, testified that Plaintiff was replaced by Joel Jordan, whom she estimated to be in his "thirties."  (Dkt. # 19-4, Ex. D at 38–39.)  The record does not make clear when Jordan replaced Plaintiff.

9

Plaintiff accepted the offer by signing the letter,[2] and was allowed to use his previously accrued leave and sick days to cover at least part of the period between August 17 and September 4 when he was not working.[3]  (Id.; Leckemby Dep. at 69–70.)

This evidence, taken in the light most favorable to Plaintiff, is not sufficient to raise a genuine dispute of fact as to whether Plaintiff was discharged.  Plaintiff's own unsupported statement that he was fired is insufficient to raise a genuine dispute of fact given the evidence that Duggan had no firing authority, that Defendant's subsequent written offer, signed and accepted by Plaintiff, was for a "change of position or transfer," and that Plaintiff continued to be paid by Defendant after he ceased working on August 17, 2012, using accrued leave and sick days to bridge the gap to the start date of his new position.  The evidence instead indicates that Plaintiff decided to quit after multiple clashes with his

---

[2] The Court notes that Plaintiff's signature accepting Defendant's offer for transfer seriously undermines Plaintiff's contention that he even subjectively believed himself to have been fired.

[3] Defendant's compensation policies upon termination are not in the summary judgment record.  While Plaintiff's counsel argued at the hearing that it was her understanding that Plaintiff "was paid as if he had been terminated pursuant to [Defendant's] policies," there is no evidence in the record to support the proposition that Defendant had a policy to pay terminated employees based on accrued vacation or sick days after their termination.  The Court further notes that the fact that Defendant was able to use accrued vacation and sick days to cover the period from August 17, 2012 to September 4, 2012 is consistent with Defendant's contention that Plaintiff remained an employee during that period.

supervisor, and that Defendant nevertheless offered to allow him to instead transfer to a different location, under a different supervisor, while using his available leave to avoid an interruption in his pay.  Lacking a genuine dispute of fact as to whether Plaintiff suffered an adverse employment action, Plaintiff has failed to establish a prima facie case of age discrimination, and his claim therefore fails as a matter of law.

At the hearing Plaintiff's counsel argued that Defendant's offer to transfer was for a "noncomparable position," and that Plaintiff was therefore not required to accept it.  The rule requiring a claimant to seek employment that is substantially comparable to the position from which he was unlawfully discharged relates to an employee's duty to mitigate damages, see Sellers v. Delgado Cmty. Coll., 839 F.2d 1132, 1136 (5th Cir. 1988), and cannot assist Plaintiff in establishing a prima facie claim of discrimination.  To the extent that Plaintiff seeks to argue that Defendant's offer was in fact a choice between a lesser position and no position at all, that argument is unsupported by any record evidence.

As additional circumstantial evidence of age discrimination, Plaintiff points to his testimony that Duggan stated, in April 2012, that "maybe I can't handle this—this property.  It's too big for me now.  Maybe I need a smaller property . . . ." (Leckemby Dep. at 36.)  "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or . . . as additional

evidence of discrimination." Laxton v. Gap Inc., 333 F.3d 572, 583 (5th Cir. 2003). "[W]hen an employee offers workplace comments as circumstantial evidence of age discrimination, the court applies a flexible two-part test, under which the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." Squyres v. Heico Cos., L.L.C., — F.3d —, 2015 WL 1501050, at *9 (5th Cir. 2015) (internal quotation marks omitted). Duggan's statement does not on its face have anything to do with age, and Plaintiff points to no other statements or circumstances that would suggest that Duggan's statement demonstrates discriminatory animus.

At the hearing, Plaintiff's counsel also argued that Plaintiff was behind on make-readies, which was the subject of several meetings with Duggan as well as part of the basis for one of his written complaints, because Duggan had refused to give him the resources necessary to do his job. Plaintiff's argument appears to be that Duggan's alleged refusal to provide Plaintiff with necessary resources is further circumstantial evidence of age discrimination. Duggan's own testimony, however, was that she "offered to bring someone in from another property to help him get organized and get caught up." (Duggan Dep. at 65.) Even if Duggan did refuse Defendant's requests for more resources, such conduct would

be insufficient to raise a dispute of material fact as to whether Plaintiff was discriminated against based on his age absent additional evidence of conduct or comments connected to an adverse employment action or otherwise showing discriminatory animus.

Because Plaintiff has failed to present evidence establishing a dispute of material fact as to whether he was discriminated against based on his age, Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination claim.

II.     Retaliation Claim

"An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code § 21.055.  The same burden-shifting framework that applies to claims for discrimination applies to retaliation claims. McCoy, 492 F.3d at 556–57.

In order to establish a prima facie case of retaliation, a plaintiff must show that "(1) [he] engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action." Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech.

Coll., 719 F.3d 356, 367 (5th Cir. 2013) (stating the standard under Title VII). In the context of a retaliation claim, an adverse employment action is an action that would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). If a prima facie case is established, the burden shifts to the employer "to articulate a legitimate . . . nonretaliatory reason for its employment action." McCoy, 492 F.3d at 557. If the employer meets this burden, the plaintiff must show that the employer's proffered reason is a pretext for a retaliatory purpose by rebutting each nonretaliatory reason articulated by the employer. Id.; Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004) (holding that a plaintiff asserting a retaliation claim under Section 21.055 of the TCHRA must show that but for his protected activity, the employer's prohibited conduct would not have occurred when it did).

As discussed above, Plaintiff has not submitted evidence sufficient to establish a genuine dispute of fact as to whether he was discharged. Plaintiff also points to two other actions that he claims to be retaliatory: his second written warning, issued by Duggan in August 2012, and Defendant's failure to investigate Plaintiff's initial April 2012 complaint. (Dkt. #19 at 6.) The August 2012 written warning stated that Plaintiff had (1) negatively referred to Duggan while interviewing an applicant for a maintenance decision, (2) arrived late to a property

14

event and left early without informing Duggan, and (3) was behind on make-readies by multiple units and had not demonstrated sufficient effort to fix the problem.  (Dkt. # 15-8, Ex. G.)  Plaintiff contends that the first two allegations are false, but testified that he was in fact late to the property event.  (Leckemby Dep. at 61, 66.)  Plaintiff does not appear to dispute that he was behind on make-readies at the time.  Given that the warning had at least some factual basis, and absent any apparent link to Plaintiff's age discrimination complaint four months prior, the written warning is not the sort of action that would dissuade a reasonable employee from making or supporting a charge of discrimination, and thus cannot qualify as an adverse employment action.

With regard to Defendant's failure to investigate Plaintiff's April 2012 discrimination complaint, an employer's failure to investigate a discrimination complaint cannot be considered an adverse employment action taken in retaliation for filing the same discrimination complaint.[4]  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) (reasoning

---

[4] The Court also notes that Escobar testified that she did not understand Plaintiff's statement to be a complaint at all, coming as it did "out of left field while we were in the middle of another conversation . . . because it had nothing to do with what we were talking about." (Escobar Dep. at 15.) Escobar's failure to realize that Plaintiff was complaining of age discrimination is a legitimate nonretaliatory reason for not investigating his claim, and Plaintiff has presented no evidence that Escobar's proffered reason is pretextual. Plaintiff's claim would thus fail even if the failure to investigate Plaintiff's discrimination complaint constituted an adverse employment action.

that "affirmative efforts to punish a complaining employee are at the heart of any retaliation claim," and that the absence of an investigation would not dissuade a reasonable employee from bringing or supporting a discrimination claim).  Plaintiff has offered no other action by Defendant that would dissuade a reasonable employee from making or support a discrimination charge.  Plaintiff has thus failed to show an adverse employment action necessary to support a prima facie case of retaliation.

Additionally, even if there were sufficient evidence to genuinely dispute whether Defendant discharged Plaintiff on August 17, 2012, Plaintiff has not established a genuine dispute of fact as to whether a causal link exists between his protected activity and the adverse action.  Plaintiff complained to Duggan and Escobar that he felt he was being discriminated against in April 2012.  (Leckemby Dep. at 50–51.)  Plaintiff's alleged discharge occurred on August 17, 2012.  (Dkt. # 19-6 at 4.)

"[T]o be persuasive evidence, temporal proximity must be very close."  Gorman v. Verizon Wireless Tex., L.L.C., 735 F.3d 165, 171 (5th Cir. 2014) (quoting Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007)).  The Fifth Circuit has acknowledged that "temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation."  Strong, 482 F.3d at 808.  The Supreme Court case cited by the Fifth Circuit for that

proposition itself cited two cases in which circuit courts had held that a three- and four-month period was insufficiently close to establish a prima facie case. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001).

       Here, the alleged discharge occurred four months after Plaintiff's complaint, and is insufficiently close to establish a causal link absent additional evidence of a retaliatory motive. Plaintiff cites Duggan's second written warning as such additional evidence, but as discussed above, the warning had a factual basis in Plaintiff's conduct and was itself issued four months after Plaintiff's complaint. While Plaintiff argues that the fact that he received no negative performance reviews under his previous supervisor indicates that his "false write-up" was connected to his discrimination complaint, he does not dispute that he was in fact late to a property event and remained behind on his make-readies.[5] Cf. Shirley v. Chrysler First, Inc., 970 F.2d 39, 43 (5th Cir. 1992) (finding causation where plaintiff showed that she was fired for incidents for which no evidence existed). Lacking any additional evidence of retaliation, the four months between Plaintiff's April discrimination complaint and alleged August discharge is insufficient to

---

[5] The Court also notes that the change in supervisors between the time period during which Plaintiff received no negative reviews and his subsequent written warnings further weakens any inference of a causal connection.

establish the causal link necessary to support a prima facie case of retaliation.[6]

Plaintiff has thus failed to offer sufficient evidence to support a genuine dispute of fact on whether he suffered an adverse employment action and whether the alleged adverse action was causally linked to his claim of discrimination. Plaintiff has therefore not established a prima face case of retaliation, and Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. # 15).

**IT IS SO ORDERED.**

**DATE:** May 26, 2015, Austin, Texas.

_____
David Alan Ezra
Senior United States Distict Judge

---

[6] Plaintiff also contends that there is sufficient temporal proximity because he reasserted his discrimination complaint in the meeting in which he was allegedly discharged. The evidence cited by Plaintiff, however, is Gonzalez's deposition testimony, which states immediately after the quoted material that Plaintiff gave up his keys and left the meeting without prompting and despite Duggan's attempt to explain that the meeting was "merely a written counseling." (Dkt. # 15-6, Ex. E at 18.) Plaintiff also testified that he did not complain to Duggan that he was being discriminated against after his April 2012 meeting with Duggan and Escobar. (Leckemby Dep. at 52.) The evidence thus directly contradicts Plaintiff's assertion that he was discharged in retaliation for an August 17 claim of discrimination.